You need a recess? Go ahead, please. May it please the Court. My name is George Ferides, appearing on behalf of Petitioner Aman Birakar, a native and citizen of India. Petitioner is challenging the decision of the Board of Immigration, the Board of Immigration Appeals, affirming the Immigration Court's decision to deny Petitioner's claim of asylum and withholding of removal. Before the Immigration Court, the Immigration Court found that though Petitioner had testified credibly and established past persecution on account of imputed political opinion, that Petitioner had not established future persecution if she were forced to return to India. However, since Petitioner has established past persecution, she is entitled to a presumption that she will suffer future persecution if she were forced to return to India. The government has the burden of rebutting the presumption that Petitioner will suffer persecution. The government and the Immigration Court relied on two factors to determine that that presumption had been rebutted, that Petitioner's presumption had been rebutted. Number one, the Court and the government cited three pages of the addendum to the country conditions reports, as well as certain aspects of Petitioner's testimony. However, Petitioner argues that that alone, those two factors taken together, do not sufficiently rebut her presumption of future persecution. In fact, it is well settled that country condition reports alone, general country condition reports alone, are not sufficient. And furthermore ---- But then the IJ went on to talk about some individual factors. So it appears that the IJ dotted the I's and crossed the T's as far as what he needed to do procedurally. In other words, he applied the presumption. Often we see where they may not apply the presumption. So he applied the presumption, said it was rebutted. He made an individual assessment. And in the context of the country conditions, our view is pretty limited at this point. What do you say is the clearest path of error here? Well, Petitioner would submit that we have country condition reports that are in itself not enough. So the government has to come up with something above that, above and beyond that. So the government and the IJ look to the Petitioner's testimony. And that's the only other thing in the record that the Court ---- that we can look at as far as future persecution. Petitioner submits that ---- well, concedes that although the testimony on the record does not indicate that she would ---- does not indicate that there's evidence of future persecution, there's no evidence that she wouldn't be persecuted if she went back to India. In fact, the record is almost completely silent on the issue. Well, what about the phone call with the father? Excuse me? What about the telephone call that she had with her father? I mean, there's ---- Okay, I ---- That seems like the most recent information, and there's no indication that they're still looking for her. Yes, I refer the Court to pages 158 and 159 of the record, where she had this conversation with her father. However, she asked her father about what was going on back at home, but it seems more of a personal phone call. In fact, there's nothing said that she would suffer persecution or that the police were still looking for her. Well, that's one way to interpret it, but isn't it another way to interpret it that what's going on back there, and the father doesn't say they're still looking for you, couldn't a reasonable finder of fact conclude that they're not looking for her anymore? Granted, you could interpret it another way, but don't we have to find that nobody could interpret it otherwise? Yes, but since the petitioner has a presumption, it is the government's burden to affirmatively rebut that presumption, and that petitioner's omission by itself is not enough, because that would be tantamount to rendering the presumption meaningless, because it would affirmatively place upon her the burden of coming forward with evidence, and it would in fact place a prime officiate requirement on her. It is the government's burden to come forward with evidence that affirmatively states that she would not be persecuted if she were to return to India, and then only then would petitioner be required to present additional evidence. Her silence in itself, or omission, to state that she knows for a fact that the police are still looking for her. Right, but didn't she testify that the police weren't still looking for her? No, she didn't say either way. All she said is that she knows that... Police stopped coming to her house after her father paid a bribe of 40,000 rupees? That the police never came back to her home to harass her family and inquire into her whereabouts. Right. That bribe does not suggest, however, that the police would not be interested in her if she were to return to India. It says nothing that if they found her, they would not persecute her. It only says that after that bribe had been paid, after she had been relocating throughout India, that the police stopped coming to her house. And yet she does say on page 110 of the record that despite this payment of a bribe, that she says, and I quote, I was afraid the police might arrest me again because police could have arrested me anyway. And... That's a subjective... That's her subjective opinion. I mean, it's the court's, it has to be a well-founded fear, yet the government has not provided evidence saying that payment of a bribe in itself suggests in any way that the police wouldn't persecute her if they found her. It only says, according to the record implicitly anyway, that the police didn't go back to her home to harass her family and inquire into her whereabouts because they knew that she wasn't there, they had been paid money. And yet this was, her hearing was two years after the last time, her last hearing was two years after the last time the police had come to her home. There's no evidence that the police wouldn't have, wouldn't have continued to be interested in her or inquire into her whereabouts. And unless the Court has any other questions, I could defer the rest of my time and defer to the respondent. Thank you. May it please the Court. James Grimes for the government. Your Honors, in this immigration case, Petitioner Cower had multiple opportunities before an asylum officer, before the Board, and before an immigration judge to show that she deserved asylum and withholding, but she was unable to do so. And before this Court, she is not entitled to either form of relief because as the immigration judge determined, she does not have a well-founded fear of future persecution. Because the record supports that determination, this Court must affirm under Elias Zacharias because nothing compels reversal. I think this case comes down to two factors, and in considering those two factors, I think it's important to remember that the police's initial interest in Ms. Cower was not because of an alleged, her alleged politics, but because she was a witness to a crime. Well, the I.J. found an imputed bias in the, I'm sorry, persecution on the basis of imputed political opinions. Aren't we beyond that now? No, you are, Your Honor. I just, I think that's an important part of the framework as it relates to the two points I'm going to get to. And those points are that the evidence that officials stopped coming to her parents' home, stopped looking for Cower after her father paid them to stop coming, and then the country conditions evidence that the law and order situation in the Punjab had normalized and there had been an end to abuses related to the investigation of the militancy. Now, those two facts on which the immigration judge relied, in fact, are in the record, and therefore the record does support his determination. The police aren't coming to her parents' home anymore. They're not looking for Cower anymore. Incidentally, her father remains there, and apparently she testified that he suffered some mistreatment himself. So the immigration judge was correct in denying Cower's application because she does not have a well-founded fear of future persecution. Now, I will grant that her testimony varied as to when the last time the police came to her parents' home. At page 158 of the record, she said that the police came two to three times after she left for the United States. But then on the very next page, at page 159, she clarified and said, well, actually they didn't come after I came to the United States. And in fact, she said at page 110 and 160 that police stopped coming after her father paid them. Now, it's interesting to note that I know this morning that Petitioner speaks of that payment as a bribe. At page 159 of the record, she said that it's not a bribe, and I'm not exactly familiar with Indian law and exactly what else it could be. I know in this country we would probably consider it a bribe. But she said that she seemed to indicate, although it was a bit unclear, that it was some sort of normalized payment, is what she said. But she specifically said it's not a bribe. But in any event, she said that her father – What sort of normalized payment would cause the police to stop investigating other than a bribe? Your Honor, I think, as I said, in this country I think we would consider it to be that case. But she said – I guess that would be maybe a cultural difference. I don't know. But I do know that what she said was it's not a bribe. It's probably not – Well, I understand your point. There's something odd about these cases, though, in the sense of requiring somebody to show that they're still looking for the person who's fled the country. Now, I would think an investigating officer of reasonable intelligence would say, well, all right, we verified that she's – she's been back here three or four times, she's left the country. Why should that be considered as evidence that she's no longer wanted? In other words, I mean, it just seems to me how many times is a – if they're searching for somebody and they're informed she's left the country and the objective manifestations are she's left the country, why would anybody reasonably keep looking for her, and why should we take that into consideration? Well, I beg your pardon, Your Honor. I don't believe that's what the testimony was. At page 167 of the record, she said that the police – that she was in Hohjarpur, if I'm pronouncing the city correctly, when her father made the payment, and she said they didn't come after that. Well, she spent at least five more months in the country. Right. No, I understand that. So there was – But she was in hiding, wasn't she, for those five months? Wasn't she in Luthahanda and then Borelli? Yes, Judge Sullivan, I believe she – she stated she was in hiding. Of course, there was the evidence that the police could have – could have found her, and they certainly knew where her parents were. So they didn't – and that was how – I believe – I believe that's the case, Your Honor. Well, all that means is that they – they didn't find her. Well, when they couldn't find her before, they took her father into custody, and he told – he told them where she was, so they certainly knew how to find her. And after he paid them not to – not to look for her anymore or not to come to their – his house anymore, they stopped coming. So there was a definite period of time of at least five months and up to seven months, as her testimony at page 109 reflects, in which they stopped looking for her. Let me ask you another question, Mr. Grimes, if I may, that troubles me about this, and that – that has to do with the individual analysis and the country conditions. I guess you've got me convinced that things have improved for Sikhs in Punjab based on the country conditions. But what strikes me as unique about this case is she's not just an ordinary dissident who is working for a separatist state. She's a witness to a – to a crime. And the country conditions don't speak to that. Her situation is unusual. Yes, Your Honor, I think I can speak to that, and I think I can explain where I think the immigration judge was going. It appears – and that's why I said that we have to remember that the reason the police were initially interested in Ms. Karl was because she was a witness to a crime, to a murder. Right. And if we look to the fact that there had been these militancy-related abuses, probably as a result of the pressure on the police to crack down on terrorism, as certainly we see that in this country today, the country conditions might explain why the police would not feel the need to put the pressure on Ms. Karl anymore. If the militancy-related abuses are an end, the law and order situation is an end. But I don't see anything in the country conditions report that says that. I'm sorry, Your Honor. I don't see anything in the country conditions report that says that as a result of the easing of conditions in Punjab, the cops are no longer as zealous as they used to be in solving unsolved homicides. Your Honor, page 239 of the record, the conditions report says that the militancy-related abuses are an end. Those are the abuses by the police related to their investigation of militancy. So that explains why the police would not be – I mean, I interpret that to mean they're no longer cracking down on people who are demonstrating for a separatist calisthenic. I didn't – I don't read that or interpret that to mean they were giving amnesty to people who committed murder. And she – certainly there's no evidence that she committed a murder. Her testimony was that they started to imply that she was in league with the militants. And so if they are imputing a political opinion to her, and yet the militancy-related abuses have come to an end, then one would have to conclude that their interest in her would similarly come to an end, especially when we have the testimony that her father has paid the police to stop coming to look for her, and in fact, we know that they have stopped coming to look for her. That's the point that I don't understand, that they've stopped, but they know she's gone. Why wouldn't she stop? Why should you hold that against the Petitioner? There's no – I'm speaking more generically. I understand your record argument about that. But we always hear these arguments that they've stopped looking for her. And to me, I'm not sure that that is – that's a defining point of all. I understand what you're saying. In the case where we have evidence that the police knew she had left the country, that might be the case. But that's not the – there was no testimony in this case that she was – that the police were even told that she left the country. All we know is that she was still in the country for at least five months when her father paid them. For all we know – I mean, if that's the – if that's her testimony, if that's the case, they didn't come back in the succeeding five months, then they would have no idea that she left the country, or – because they apparently don't care anymore. So there – in this case, there's no evidence that the police were even aware that she left the country. There's no evidence that they stopped looking for her because she left the country. The only evidence we have is that they stopped looking for her because they were paid and because we can see why they would also no longer be interested in her, because the law and order situation has changed in that area. So in any event, the record does support the immigration judge's decision. There's evidence that the police are no longer looking for her, and therefore, she does not have a well-founded fear of future persecution, and this Court must affirm the immigration judge's decision. Unless there are any further questions, that is what we ask this Court to do. Thank you. Thank you. Thank you, Mr. Grimes. Mr. Varl? Your Honors, on – based on the record, we do know that Petitioner had fled her village on two occasions, and the police had tracked her down on both instances and arrested her. And we know she's been arrested at least three times and been detained by the police on numerous other occasions to act as a witness and to identify and implicate innocent people for crimes that they – that she did not think that they committed. Based on the record, to rebut Petitioner's presumption of a well-founded fear of future persecution, we have general outdated country conditions reports and virtually nothing on – in Petitioner's testimony to indicate that the police would not be interested in her if she were in India. We only have a payment that was paid to the police so that they wouldn't come by and harass Petitioner's family anymore. And we imply from that that the – what we imply from that is not that – is not that she would not be persecuted, but that we do not know whether or not she would be or not. And if we accept the country reports, it's true that, in fact, they aren't cracking down on militants in the region anymore. Doesn't that undercut your position that she would be persecuted if she came back? Because the ostensible basis of her claim is that there was an imputed opinion, and because of the imputed opinion, she was singled out. Now, if they aren't singling out people on that and persecuting people on that opinion anymore – and I grant the deficiencies in country reports, but we have to take them for what they are – and there's the – at least some evidence that they aren't looking for, where does that leave us? Well, Petitioner could only challenge that such militancy-related abuses have not ceased and that this is the best evidence on the record of that.  Based on the past experiences she suffered in India, based on our own country conditions reports that we submitted, I believe are in the record. And also – and to conclude, I would only say that that is the government's burden to rebut the presumption, and they have not rebutted by substantial evidence. If we consider the three-page addendum to the country conditions report and the omission and Petitioner's testimony, that she would definitively be persecuted if she were to return to India. So, if there's anything else from the Court of Attorney? No. All right. No. Thank you. Thank you. Thank you. Thank both counsel. This case is submitted for decision. Final case on today's argument calendar is United States v. Boulware. Thank you.
judges: Tashima, Thomas, Silverman